Armour *v.* Connolly.

---

PHILIP D. ARMOUR et al., trading as Armour & Company, complainants,

*v.*

MICHAEL T. CONNOLLY and ADAMS & COMPANY, defendants.

[Filed June 16th, 1902.]

Where, by fraudulent practices, possession of a building standing upon leased land has been obtained under an agreement with the owner of the building to tear it down or remove it, equity will restrain a party to such contract from using the possession for any purpose other than that for which it was obtained.

On appeal of Jonathan J. Armour, survivor, &c., from an order sustaining a demurrer advised by Vice-Chancellor Emery, whose opinion is reported in *49 Atl. Rep. 1117.*

*Mr. Albert C. Wall,* for the appellant.

*Mr. Joseph Anderson,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

The complainants' bill presents the following case against Adams & Company, who have demurred:

The complainants, trading as Armour & Company, had erected a warehouse for meats upon leased land, with the privilege of removing such building at any time during the term, which had not expired when the bill of complaint was filed. Later the complainants erected another building upon a tract of land adjoining the above, in which to engage in their business of wholesaling meats, and were, in consequence, desirous of having the first-mentioned building torn down or removed before their lease was up. This building, which was fairly worth between $3,000 and $4,000, was sought by Adams & Company, for the purpose of carrying on their business, which was also wholesaling meats. Armour & Company refused the offer of Adams & Company, by which $2,000 or $3,000 could have been got for the building, and instead thereof, and for the express purpose of having it torn down, sold it to one Michael T. Connolly, a contractor engaged in the business of razing buildings, for the sum of $250, he agreeing to take down or remove the building within two weeks from its vacation by the complainants. The bill then goes on to state that this sale was the result of a fraudulent conspiracy between Adams & Company and Connolly, entered into and carried forward for the purpose of "enabling Adams & Company to get possession of the building intact and unremoved," and that the possession that Connolly obtained, under the color of carrying out this agreement to tear down or remove the building, was, in pursuance of this secret arrangement, passed on to Adams & Company, who were making use of such possession to repair the building and proposed to carry on their business therein.

Upon this state of facts the complainants' prayer was for gen-

eral relief against Adams & Company and Connolly, for specific performance against Connolly, and for injunction against Connolly and Adams & Company to restrain them, or either of them, from occupying or using the said building, except for the purpose of tearing it down or removing it.

Adams & Company alone have demurred. In sustaining this demurrer the case made by the bill was considered by the learned vice-chancellor almost wholly in the light of its prayer for specific performance, which was against Connolly alone, and the conclusion that was reached rested largely upon the unwillingness of the court of chancery to enforce the specific performance of a building contract, which this was held to be. Obviously, however, if there are in the bill facts well pleaded, which, if unanswered, will support some decree against Adams & Company that is within the prayer of the bill, their demurrer should not be sustained merely because a wrong remedy has been prayed against another defendant. The relief to which the facts entitle the complainants, as against Adams & Company, does not involve specific performance or any of the other matters discussed in the opinion of the court below.

The remedy to which the complainants are, in my judgment, entitled is the injunction they ask against Adams & Company to be made perpetual, if, upon final decree, the facts are not varied. This relief rests upon the fact established by the pleadings that, in the fraud by which Adams & Company obtained possession of the building in question, Connolly was the *alter ego* of Adams & Company, so that his agreement to use the possession of the building for the purpose of tearing it down or removing it was, in equity, their agreement. To avert a fraud or to right a wrong, equity will consider the wrongdoer as doing, or as having done, that which he ought to have done. Adams & Company, under the agreement with the complainants, which they made through Connolly, ought to have torn down or removed the building—at least, they held their possession, in the eye of equity, for no other purpose. Any use of their possession, therefore, that is not consistent with the performance of their contract, is a fraud upon the complainants, and a wrong for

which, under the circumstances, injunction is the only adequate remedy.

Upon this ground the order made in the court below should be reversed.

*For reversal*—The Chief-Justice, Van Syckel, Dixon, Garrison, Collins, Fort, Hendrickson, Pitney, Bogert, Krueger, Adams, Vredenburgh, Voorhees, Vroom—14.

*For affirmance*—None.